## ADAM MOSER, Appellant, v. HENRY LOWER, Respondent.

### Kansas City Court of Appeals, February 8, 1892.

1. **Contracts:** WHEN JURY QUESTION OR LAW QUESTION. If a verbal contract is from the testimony uncertain, the question as to what it is should be submitted to the jury; but where there is no difference as to its terms. and only its effect is in issue, the court passes upon the question as a matter of law.

2. ———: CONSTRUCTION : TENANT OR CROPPER. In passing upon the question of whether a given contract constituted the cultivator a tenant or cropper, the only general rule is, that each case must depend upon the special terms of the contract, the subject-matter and surrounding circumstances, in the light of which it is to be interpreted, the question being, as in case of other contracts, what was the intention of the parties.

3. ————.: TENANT OR CROPPER : OWNER OF STALKS.   It was agreed
that plaintiff should plant and raise a crop of corn on the defend-
ant's field, composing a part of his farm, for the next year, and
that he should turn under the clover sod in the fall prior, plaintiff
to have two-thirds of the corn and defendant one-third in the
crib.     Nothing was said as to when the tenancy commenced or
expired.   *Held*, whether the agreement made plaintiff a tenant or
merely a cropper for the season, he and the defendant were tenants
in common of the crop.   *Held*, further, that plaintiff was a cropper
only, and had the mere naked right to enter the field to perform
and complete the labor necessary under the provisions of the con-
tract which would include the right to pasture his portion of the
stalks.

4. ———— : ———— : STALKS PART OF THE CROP.   Stalks being of sub-
stantial use as feed are to be considered as a part of the crop, and
are subject to the same rules of division as the contract provides for
the crop, and custom should not control the plain terms of the con-
tract.

*Appeal from the Buchanan Circuit Court.*—HON. A. M.
WOODSON, Judge.

AFFIRMED.

*W. H. Utz* and *Casteel & Haynes*, for appellant.

The only theory on which the court could refuse
declaration, numbered 1, offered by appellant would
be, *first*, that under the contract the relation of land-
lord and tenant was not created ; *second*, that, if said
relation was created, the tenancy expired when the
corn was gathered and prior to the time of the bring-
ing of this suit.   (1) The relation of landlord
and tenant may be created for a period of one year,
by parol.   *Ridgley v. Stilwell*, 25 Mo. 570 : *Scully v.
Murray*, 34 Mo. 420.   The relation of landlord and
tenant may be created though the rent be payable in
part of the crop, and the landlord is liable to the tenant
if he trespasses on demised premises.   *Blake v. Coats*,
3 Greene ( Iowa ) 548 ; *Rees v. Baker*, 4 Greene ( Iowa )
461 ; *Atwood v. Ruckman*, 21 Ill. 200 ; 1 Ind. 554 ; 56
Ind. 165.   In the case of *Johnson v. Hoffman*, 53 Mo.

504, the landlord was held liable for forcible entry and detainer where he furnished the seed for planting, the teams, etc. The landlord in this case furnished nothing and had already received all the rent due him, had no further claim to premises until tenant's lease expired. *Kamerick v. Castleman*, 23 Mo. App. 481. (2) If the relation of landlord and tenant existed at all, then it ran for one year. When did it commence and end? The custom is so universal in this state, when a piece of ground is rented to raise a corn crop, that the lease commence March 1, and runs to March 1 following, the court will take judicial knowledge of it. See also the evidence of the witnesses to that effect on both sides.

*P. J. Carolus* and *Johnson & Wilson*, for respondent.

(1) In order to constitute a lease the occupant must have an interest in the soil. 1 Wash. Real Prop. 496. (2) So it is said, a letting of lands upon shares, if for a single crop, is no lease of the land, and the owner alone must bring trespass for breaking of the close. And the same rule prevails if it be for successive crops. 1 Wash. Real Prop. 496; 1 Hill, Real Prop., ch. 15, sec. 24; *Atwood v. Ruckman*, 21 Ill. 200; *Bishop v. Doty*, 1 Vt. 38. (3) It is a contract of hiring. *Porter v. Chandler*, 7 N. W. Rep. (Minn.) 142. The courts universally hold that there can be no definite rule laid down to govern this class of contracts, but that each case depends upon its own agreement. *Warner v. Abbey*, 112 Mass. 355, 359, and cases cited; *Johnson v. Hoffman*, 53 Mo. 508; *Kamerick v. Castleman*, 23 Mo. App. 481; *Atwood v. Ruckman*, 21 Ill. 200. (5) In order that a custom or usage of trade may enter into and affect the construction of an agreement, it must be shown to be so general and well-established that the parties must be presumed to have had knowledge of it,

and to have contracted with reference to it. *Conable v. Clark*, 26 Mo. App. 174; *Martin v. Hall*, 26 Mo. 386; *Press Co. v. Stanard*, 44 Mo. 71; *Walsh v. Trans. Co.*, 52 Mo. 434. (6) The agreement between appellant and respondent to divide the stalkfield *pro rata* was a settlement of a point in the original contract left by them undefined, and the consideration to each of them was the settlement of what both deemed an uncertainty in the terms of the original contract.

ELLISON, J.—This is an action in trespass brought by the cultivator against the owner of the field. The question to be determined is, who owned the stalks after the corn was gathered from them, the cultivator or the owner? The cultivator claimed to own all; the owner claimed one-third. Plaintiff and defendant lived on farms in the same neighborhood. In the fall of 1888, they agreed that plaintiff should plant and raise a crop of corn in the season of 1889, on a twelve-acre clover field belonging to defendant, and which composed a part of his farm; plaintiff to have two-thirds, and defendant one-third of the crop of corn; defendant's one-third was to be cribbed by plaintiff. In order to raise a better crop, they agreed that plaintiff should turn the sod under that fall. There was nothing said as to when the tenancy should commence or expire. Sometime in November, 1889, while the corn was being gathered, plaintiff and defendant met and discussed the question as to which one was entitled to the pasturage of the field after the corn was off, and they finally agreed they would pasture together, Lower one-third, and Moser two-thirds, but after that and before any stock was turned in by either party Moser changed his mind and notified Lower not to turn in any stock. Lower paid no attention to the notice, and on or about December 1, 1889, turned in several head of cattle, and pulled down the fence and turned them out and in at his pleasure for several days, and one day left the fence down so Moser's cattle got out into other premises, and he lost

some time in hunting them up. The evidence showed the stalkfield, before it was pastured, to be worth from fifty cents to $1 per acre. Moser had possession of the field while preparing the ground, putting in, tending and gathering the crop, furnished his own seed, and used his own teams, machinery, etc. Lower had nothing to do save receive his one-third when it was put in his crib for him. The cause was tried without a jury, and at the close of the case the court gave a declaration in the nature of a demurrer to the evidence.

An investigation of the cases will show that there is much divergence in the views of different courts on questions bearing close relation to the one here presented. It would be a task beyond the scope of an ordinary opinion to go into an examination of these different views, or to dwell upon the reason controlling them. We will, therefore, only attempt to ascertain those principles which necessarily bear upon the question now under consideration. The contract between the parties being verbal, if it was uncertain from the testimony what it was, the question as to what it was should have been passed upon as a question of fact by the triers of the fact. *Orcutt v. Moore*, 134 Mass. 48. But as there is no difference between the parties here as to the terms of the contract, but only as to its effect as did the trial court, we will declare its effect as a matter of law. There can be no precise rule for the interpretation or construction of contracts of this nature, and each case must be considered and governed by its own circumstances. 53 Mo. 508. The only general rule, says MORTON, C. J., in *Orcutt v. Moore, supra,* is that " each case must depend upon the special terms of the contract and the subject-matter and the surrounding circumstances, in the light of which it is to be interpreted, the question being, as in case of other contracts, what was the intention of the parties."

It is evident to my mind that the relation created by the agreement in this case made the plaintiff and the

defendant tenants in common of the crop; and this is true whether the agreement be considered as establishing the plaintiff as defendant's tenant, or as merely a cropper for the season. The contract, if it had other elements necessary to constitute plaintiff a tenant, under the better authority would probably be held to provide, though not for technical rent, yet for a rent reserved in a certain proportion (whether large or small) of the product of the premises; and defendant's proportion as owner of the premises would be his property even before division. *Moulton v. Robinson*, 7 Foster, 559; *Guest v. Opdyke*, 31 N. J. 552; *Hatch v. Hart*, 40 N. H. 93. But the contract between these parties does lack necessary elements to establish the relation of landlord and tenant, or to give plaintiff any interest in the land as a tenant. Notwithstanding the use of the word "rent" by the parties in testifying as to the terms of the contract, yet such expression will not control the meaning which is made quite clear by looking at the entire agreement as a whole. *Aiken v. Smith*, 21 Vt. 180. Our construction of the agreement in its entirety is, that plaintiff was not defendant's tenant; that he was a mere cropper for the season, without interest in or possession of the premises, save the mere naked right to enter the field to perform and complete the labor necessary under the provision of the contract. *Warner v. Hosington*, 42 Vt. 44. And this, in this case, would include the right to pasture his portion of the stalks.

After gathering the crop, his rights and interests in the field would ordinarily cease. *Kamerick v. Castleman*, 23 Mo. App. 481. But since it is a well-known fact that stalks, which remain after corn is gathered, are of substantial use to farmers as feed for cattle, it may well be said that in this case the stalks should be considered as a part of the crop, and that plaintiff and defendant were tenants in common of such stalks, as they were of the corn: that is, they were tenants in common of the entire crop, which included the stalks. And

this is the interpretation *the parties themselves* gave to the contract, as shown by their agreement, that each should turn cattle in the field in the same proportion as their interest was in the crop. The custom attempted to be interposed should not control the plain terms of the contract.

It follows, therefore, that the judgment should be affirmed.